IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ARTHUR THOMPSON | CRIMINAL ACTION<br><br>NO. 25-13-KSM-1 |

MEMORANDUM

**Marston, J.**                                                                           **June 16, 2025**

Defendant Arthur Thompson was indicted by a federal grand jury on a single count of violating 18 U.S.C. § 922(g)(1), which forbids any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] . . . any firearm or ammunition." (Doc. No. 1.) Thompson moves to dismiss the indictment on the grounds that § 922(g)(1) violates his rights under the First and Second Amendments to the United States Constitution and the Religious Freedom Restoration Act ("RFRA"). (Doc. No. 26; *see* Doc No. 33.)[1] The Government opposes the motion. (Doc. No. 33.) For the reasons discussed below, the Court denies his motion.

**I.    FACTUAL BACKGROUND**

On August 12, 2004, Thompson was sentenced to eight to twenty years' imprisonment after being convicted in the Court of Common Pleas of Philadelphia County for Attempted Murder, Aggravated Assault, Carrying Firearms without a License, and Possession of an Instrument of Crime. (Doc. No. 30 at 1–2.) He was paroled on August 15, 2011. (*Id.* at 2.)

---

[1] Thompson subsequently filed a *pro se* "Amended Motion to Suppress Evidence" in which he moved to both suppress "any weapon used in this case as evidence" and dismiss the indictment based on his First and Second Amendment rights. (Doc. No. 36.) Because Thompson filed his *pro se* motion while he still represented by counsel, the Court denied it. (Doc. No. 39.) But even if his motion were proper, it would fail for the same reasons stated in this Memorandum.

While still on parole on December 20, 2022, Thompson allegedly possessed a Ruger, Security 9, 9mm semi-automatic pistol loaded with fifteen live rounds of ammunition. (Doc. No. 1 at 1.)

On January 14, 2025, a federal grand jury charged Thompson with illegal possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (*Id.*)

II. **DISCUSSION**

Thompson attempts to block his § 922(g)(1) charge with a shield of constitutional challenges. Thompson first argues that § 922(g)(1) violates his right to bear arms under the Second Amendment and is thus unconstitutional both as applied to him and on its face. (Doc. No. 26 at 2–3; *see generally* Doc. No. 33.) He then contends that § 922(g)(1) violates his right to freely exercise his religion under both the First Amendment and RFRA by substantially burdening his ability to adhere to the Quran's requirement that he carry arms during prayer as a practicing Muslim. (Doc. No. 26 at 3–5; *see generally* Doc. No. 33.) Because Thompson's constitutional shield is full of proverbial cracks, the Court denies his motion to dismiss.

A. **Thompson's Second Amendment Challenges to § 922(g)(1) Fail.**

Thompson asserts that § 922(g)(1) violates his right to bear arms under the Second Amendment, raising what the Court liberally interprets as both as-applied and facial challenges to the constitutionality of § 922(g)(1). (Doc. No. 26 at 3–5; *see generally* Doc. No. 33.) As explained below, there is no merit to either challenge.

"An as-applied attack does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (internal quotation omitted). To analyze as-applied Second Amendment challenges to firearm laws such as § 922(g)(1), courts apply a two-step framework. *See United States v. Quailes*, 126 F.4th 215, 219 (3d Cir. 2025) (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17, 31 (2022))).

"Courts must first determine whether 'the Second Amendment's plain text covers an individual's conduct.' If it does, the Second Amendment 'presumptively protects that conduct,' and courts must proceed to *Bruen*'s second step, where 'the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 17). Conversely, a defendant asserting a facial Second Amendment challenge must show that the "statute is unconstitutional in all of its applications." *Mitchell*, 652 F.3d at 405 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

As the Government argues (and as Thompson effectively concedes), Thompson's Second Amendment challenges are foreclosed by the Third Circuit's decisions in *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024) and *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025). (*See* Doc. No. 30 at 3–4; Doc. No. 33 at 2–3 ("The Second Amendment grounds have been handled by the Courts. . . . There are restrictions on Second Amendment claims.").) When Thompson was arrested for and charged with possession of a firearm in this action, he was on parole in Philadelphia County. (Doc. No. 30 at 2–3.) In *Moore*, the Third Circuit rejected an as-applied challenge to § 922(g)(1) by a defendant who was on supervised release for a federal drug conviction when he was arrested for and charged with a violation of § 922(g)(1), holding that "[a] convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm." 111 F.4th at 268, 273. In *Quailes*, the Third Circuit extended its holding in *Moore* to defendants "who are on state supervised release—including a sentence of parole or probation." 126 F.4th at 217. Therefore, under *Moore* and *Quailes*, § 922(g)(1) is constitutional as applied to Thompson, a parolee at the time of his charged possession of a firearm.

3

Further, Thompson concedes that his underlying convictions—attempted murder, aggravated assault, and multiple firearm offenses—are "crime[s] of violence." (Doc. No. 26 at 3 ¶ 7.) The Third Circuit has consistently rejected such challenges to § 922(g)(1) raised by a defendant who, like Thompson, "would likely 'pose a physical danger to others' if armed," based on the violent or potentially violent nature of his underlying conviction and criminal history. *Pitsilides v. Barr*, 128 F.4th 203, 210 (3d Cir. 2025) (quoting *Range v. Att'y Gen. U.S.*, 124 F.4th 218, 232 (2024)) (cleaned up); *see, e.g.*, *United States v. Goodnight*, No. 23-1882, 2025 WL 1276000, at *2 (3d Cir. May 2, 2025) (denying, on plain error review, defendant's as-applied and facial Second Amendment challenges to § 922(g)(1) after finding it "hardly obvious that the Second Amendment bars permanently disarming someone with recent firearms and drug-dealing convictions like [defendant's]"); *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025) (affirming denial of defendant's as-applied Second Amendment challenge to § 922(g)(1) because defendant's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate he 'presents a special danger of misusing firearms'" (quoting *United States v. Rahimi*, 602 U.S. 680, 698 (2024)) (cleaned up)).

Thompson's facial challenge to § 922(g)(1) also fails. Because § 922(g)(1) is constitutional as applied to Thompson, he "cannot 'establish that no set of circumstances exists under which [§ 922(g)(1)] would be valid.'" *Moore*, 111 F.4th at 273 n.5 (quoting *Rahimi*, 602 U.S. at 693).

The Court thus finds that § 922(g)(1) is constitutional under the Second Amendment both as applied to Thompson and on its face.

### B. Thompson's First Amendment and RFRA Challenges to § 922(g)(1) Fail.

Thompson also argues that § 922(g)(1) substantially burdens his ability to "faithfully practice" Islam by prohibiting him from carrying arms as required under the Quran, in violation

4

of his right to free exercise of religion under the First Amendment and RFRA. (Doc. No. 26 at 3–5; Doc. No. 33 at 1–4.) Because Thompson's RFRA argument fails, his First Amendment challenge does too.

RFRA "guarantee[s] more generous protections for religious freedom than are available under the Supreme Court's present interpretation of the First Amendment," *Mack v. Yost*, 63 F.4th 211, 225 (3d Cir. 2023), by "proscrib[ing] government conduct which 'substantially burdens a person's exercise of religion' unless the government can demonstrate, *inter alia*, that the burden is the 'least restrictive means of furthering a compelling government interest,'" *United States v. Stimler*, 864 F.3d 253, 267 (3d Cir. 2017) (quoting 42 U.S.C. § 2000bb-1). "The party invoking RFRA bears the initial burden of making out a prima facie case by showing that (1) [he] possesses a sincerely held religious belief, and (2) the government's conduct substantially burdened that belief. The burden then switches to the government to demonstrate that its conduct is the least restrictive means of furthering a compelling interest." *Id.* at 268.

Thompson identifies as a "devout Muslim" and "strict adherent" to the teachings of the Quran, "the central religious text in the practice of Islam [and] a revelation directly from Allah." (Doc. No. 26 at 3 ¶ 9; Doc. No. 33 at 2.) According to Thompson, the Quran "requires him to carry arms" during prayer. (*Id.* at 3, 5; *see* Doc. No. 26-1 (a passage from the Quran attached to Thompson's motion, which purportedly states, "And when you are among them and lead them in prayer, let a group of them stand [in prayer] with you and let them carry their arms.").) He argues that § 922(g)(1) substantially burdens his ability to do so. (*Id.* at 3–5; Doc. No. 33 at 1–2.)

The Government, in turn, contends that Thompson has failed to establish that § 922(g)(1) substantially burdens his religious beliefs. (Doc. No. 30 at 4–6.) The Government argues that

the reference to "arms" in the Quran passage cited by Thompson cannot reasonably be understood to encompass firearms, as the Quran "was written years before gunpowder was invented." (*Id.* at 4 n.4.)  Moreover, the Government claims that Thompson has not shown that the Quran's definition of "arms" is limited to firearms, such that § 922(g)(1)'s prohibition on the possession of a firearm by a convicted felon precludes him from adhering to the Quran's instruction to "carry arms" during prayer. (*Id.* at 5–6.)  Even assuming Thompson has shown that § 922(g)(1) substantially burdens his sincerely held religious belief, the Government asserts that the uniform application of § 922(g)(1) is the least restrictive means of furthering the Government's compelling interest in protecting the citizens of Philadelphia and its surrounding counties from acts of violence. (*Id.* at 6–7.)

    **1.**  **Thompson Has Not Demonstrated that § 922(g)(1) Substantially Burdens His Religious Belief.**

  Assuming that Thompson, as an "ardent Muslim" (Doc. No. 33 at 2), holds a sincere religious belief that he must carry arms during prayer according to the Quran, the Court is not convinced that he has demonstrated that § 922(g)(1) imposes a *substantial* burden on that belief. "[A] substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available . . . versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the [G]overnment puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 356 (3d Cir. 2017) (quoting *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016)).  "A substantial burden on the exercise of religion exists only where the Government 'demands that an individual engage in conduct that seriously violates [his] religious beliefs.'" *Id.* at 359 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014)) (cleaned up).  In

other words, "[t]here is no substantial burden if the governmental action does not coerce the individuals to violate their religious beliefs." *Id.* at 357.

To properly analyze the substantiality of § 922(g)(1)'s alleged burden on Thompson's religious belief, the Court may "look[ ] to acceptable alternative means of religious practice that remain[ ] available to [him]" to exercise his particular belief. *Stimler*, 864 F.3d at 268; *see Washington v. Klem*, 497 F.3d 272, 282–83 (3d Cir. 2007) (concluding that department of corrections' policy limiting the amount of books an inmate could keep in his prison cell at one time substantially burdened his religious belief that required him to read four new books per day, after determining that the inmate had no alternative means of accessing books inside the prison that would enable him to adhere to that religious belief).

Thompson's argument relies entirely on a single passage from the Quran, which, according to his supplied translation, instructs the carrying of "arms" and refusal to neglect "weapons" during prayer. (*See* Doc. No. 26-1; Doc. No. 26 at 3–5.) But § 922(g)(1)'s prohibition is limited to the possession of a firearm. 18 U.S.C. § 922(g)(1). Thompson does not argue or otherwise show that he can follow the Quran's mandate to carry "arms" or "weapons" during prayer *only* through possession of a firearm. Indeed, he seems to concede that these words in the Quran encompass more than just firearms: "The Quran provides that during prayer, you should carry arms and not neglect your arms. Arms are generally accepted as weapons, including firearms." (Doc. No. 26 at 3 ¶ 9.)

In short, Thompson has not established that compliance with § 922(g)(1)—which, as the Government argues, does not prohibit Thompson from possessing other types of weapons, like a knife or a sword, during prayer (Doc. No. 30 at 5)—"seriously violates [his] religious belief." *Real Alternatives, Inc.*, 867 F.3d at 359 (quoting *Burwell*, 573 U.S. at 720 (2014)); *see Stimler*,

7

864 F.3d at 268 (affirming the district court's holding that defendants' prosecution under the federal kidnapping statute did not violate RFRA where none of the Orthodox Jewish defendants argued that they were unable to participate in their process for obtaining a religious divorce without engaging in kidnapping); *United States v. Kelly*, No. 18-cr-22, 2019 WL 5077546, at *25–26 (S.D. Ga. Apr. 26, 2019) (concluding that defendants "could have exercised their sincerely held religious beliefs without running afoul of criminal [trespass, injury to government property, or conspiracy] laws" based on defendants' failure to show that their belief that they "perform acts of 'symbolic disarmament,'" including protesting on a naval base, "required them to engage in those activities without permission or on portions . . . behind the perimeter fence line").

        **2.**       **The Government Has Demonstrated that Its Prosecution of Thompson is the Least Restrictive Means of Furthering a Compelling Government Interest in the Uniform Application of § 922(g)(1).**

Even if Thompson had established that § 922(g)(1) substantially burdened his religious belief that he is required to carry arms during prayer, the Court would find that the Government's prosecution of Thompson under § 922(g)(1) is the least restrictive means of furthering its compelling interest in promoting public safety and preventing violent crime through the uniform application of § 922(g)(1). "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burden." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006). Accordingly, the Court must "look[ ] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 431.

8

The Government argues that the uniform application of § 922(g)(1), which extends to the prosecution of Thompson, furthers its "paramount and compelling" interest in preventing violent crime and preserving the ability of the citizens of Philadelphia and the surrounding counties "to move safely through their daily lives." (Doc. No. 31 at 6–7.) The Government further contends that providing the religious exemption to § 922(g)(1) that Thompson seeks "would swallow the entire statute," foreclosing the prosecution of anyone found in possession of a firearm, "no matter how serious the predicate felony," who claims to be a devout Muslim adhering to the Quran. (*Id.* at 6.) The Court agrees.

The Supreme Court has recognized that "there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *O Centro*, 546 U.S. at 437. But few courts have had occasion to consider whether the enforcement of gun control laws like § 922(g)(1) is one such instance. In *United States v. Epstein*, the district court rejected a RFRA challenge to defendants' prosecution for kidnapping, finding that "the Government unquestionably has a compelling interest in uniformly applying kidnapping laws to prevent serious crimes of violence" because "[i]t is beyond cavil that the duty to prosecute persons who commit serious crimes is part and parcel of the government's paramount responsibility for the general safety and welfare of all its citizens." 91 F. Supp. 3d 573, 585 (D.N.J. 2015) (internal quotations omitted), *aff'd sub nom. Stimler*, 864 F.3d at 268 ("[E]ven if the defendants had demonstrated that the government's actions constituted a substantial burden on their religious exercise, we would nonetheless affirm the District Court's determination that the government has a compelling interest in uniform application of laws about violent crimes. . . . The Supreme Court has advised that the government's interest in preventing serious crimes is both legitimate and compelling." (internal quotation omitted)). The district court in *United*

9

*States v. Harper*—the only case both the parties and this Court have identified that involves a RFRA challenge to § 922(g)—found that "similar reasoning applies to prosecutions under § 922(g)(1), as they primarily seek to prevent harm to others." 634 F. Supp. 3d 594, 603 (N.D. Iowa 2022). Adopting the reasoning from *Epstein*, the *Harper* court concluded that the Government has "a compelling interest in public safety and preventing crime through the uniform enforcement of gun control laws," including § 922(g)(1). *Id.*

The Court finds *Epstein* and *Harper* persuasive. The Court also agrees with the Government that exempting Thompson from prosecution under § 922(g)(1) based on his religious belief that he must carry (fire)arms would "seriously compromise [the Government's] ability to administer" § 922(g)(1). *O Centro*, 546 U.S. at 435 ("[T]he Government can demonstrate a compelling interest in uniform application of a particular [law] by offering evidence that granting the requested religious accommodations would seriously compromise its ability to administer the [law]."). It would create an exception for any convicted felon who claims that possession of a firearm is necessary to adhere to his religious beliefs and thus render § 922(g)(1) effectively unenforceable. *Cf. O Centro*, 546 U.S. at 435–37 (contrasting a workable exception to the Controlled Substances Act for the sacramental use of hoasca by an approximately 130-person American branch of a religious sect with unworkable religious exceptions to tax laws and Sunday closing laws that would cause broad "administrative harm," i.e., preventing the tax system from functioning and defeating "[t]he whole point of a uniform day of rest for all workers" (internal quotation omitted)); *Harper*, 634 F. Supp. 3d at 598, 603 ("[T]he Government cannot uniformly apply its gun control laws for public safety and the prevention of crime under § 922(g)(1) or (3) without prosecuting [defendant]," a Muslim practicing "Sharia Law and its adherence to armed self-defense[.]"); *United States v. Lepp*, No.

04-cr-317, 2008 WL 3843283, at *11 (N.D. Cal. Aug. 14, 2008) (denying defendant's motion in limine to allow him to present a RFRA defense during his trial for marijuana possession after finding that "the potential for diversion" associated with defendant's requested religious exemptions "threatens to undermine the entire Controlled Substances Act and enforcement thereof").

For the same reason, the Court finds that prosecuting Thompson represents the least restrictive means to further the Government's compelling interest in the uniform enforcement of § 922(g)(1). *See Harper*, 634 F. Supp. 3d at 603; *Epstein*, 91 F. Supp. 3d at 586, *aff'd sub nom. Stimler*, 864 F.3d at 268. As the court in *Harper* acknowledged, there are no statutory exceptions to § 922(g)(1), thus this is not a situation where "the existence of government-sanctioned exceptions to a scheme purporting to be the least restrictive one possible can show that other, less-restrictive alternatives could be envisaged." 634 F. Supp. 3d at 603; *see O Centro*, 546 U.S. at 434–37 (finding that the "longstanding exemption from the Controlled Substances Act for religious use of peyote" "fatally undermine[d]" the Government's argument that the Controlled Substances Act requires uniform application with no exceptions under RFRA).

\* \* \*

In sum, Thompson has not shown that his prosecution under § 922(g)(1) for possession of a firearm as a convicted felon substantially burdens his religious belief that he must carry arms during prayer. Even if Thompson had made this showing, the Court would still reject his RFRA challenge because the Government has demonstrated that it has a compelling interest in uniformly enforcing § 922(g)(1) to promote public safety and prevent violent crime and that the prosecution of Thompson is the least restrictive means of advancing that interest. The Court thus

finds that § 922(g)(1) does not violate RFRA and, therefore, is constitutional under the First Amendment.  *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015) ("[RFRA] provide[s] greater protection for religious exercise than is available under the First Amendment.").

### III.     CONCLUSION

For the reasons set forth above, the Court denies Thompson's motion to dismiss.  An appropriate Order follows.